O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

O'Neill Hooker,

       Plaintiff,

   vs.

Parker-Hannifin Corporation,

       Defendant.

CASE NO. SACV 11-483-JST (Ex)

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I.      Introduction

Before the Court is a Motion for Summary Judgment ("Motion") filed by Defendant Parker-Hannifin Corporation ("Defendant" or "Parker-Hannifin").  (Mot., Doc. 31.) Plaintiff O'Neill Hooker ("Plaintiff") filed an Opposition (Opp'n, Doc. 34), and Defendant replied (Reply, Doc. 40).  Having heard oral argument, and read and considered the parties' papers, the Court GRANTS Defendant's Motion for Summary Judgment.

## II.     Background

Plaintiff was an employ of Parker-Hannifin's Aerospace Fluid Systems Division for approximately two and one-half years.  (Statement of Undisputed Facts ("SUF"), ¶17, Doc. 31-2.)  On January 28, 2009, Plaintiff faxed Defendant a doctor's note placing him on medical leave.  (*Id.* ¶ 2.)  Plaintiff subsequently extended his medical leave four times—on February 2, February 16, February 27, and March 5, 2009.  (*Id.* ¶ 3.)  The March 5, 2009, doctor's note provided that Plaintiff would return to work on April 15, 2009.  (*Id.* ¶ 4.) While Plaintiff was on medical leave, Kim Nguyen, a Parker-Hannifin human resources employee, sent Plaintiff a packet titled "Parker Aerospace Medical Leaves of Absence: What You Need to Know!," which reminded Plaintiff to keep Defendant informed of his status.  (*Id.* ¶ 8.)  April Sanders,[1] another human resources employee, sent Plaintiff a letter via priority overnight mail on April 15, 2009, putting him on notice that his medical leave of absence ended on Tuesday, April 14, 2009.  (*Id.* ¶ 9.)  In the letter, April Sanders warned Plaintiff that if he did not contact his team leader by 7:00 a.m. on April 17, 2009, Defendant would assume that he voluntarily resigned his employment.  (*Id.* ¶ 10.)  This was in accordance with Defendant's attendance policy ("AWOL Policy"), which states that "[U]nreported absences of three consecutive days may be considered voluntary resignation."  (*Id.* ¶ 1.)  On Monday, April 20, 2009, April Sanders sent Plaintiff a letter

---

[1] The Court refers to April Sanders throughout using her full name so as not to confuse her with Gary Sanders, a supervisor employed by Defendant.

1   acknowledging and accepting his "voluntary resignation." (*Id.* ¶ 13.)  On April 22, 2009,

2   Plaintiff's doctor extended Plaintiff's medical leave, and wrote a note to Defendant

3   updating Plaintiff's medical status.  (Statement of Genuine Issues ("SGI"), ¶ 7, Doc. 35.)

4           Plaintiff filed a First Amended Complaint on May 27, 2011, asserting nine claims:

5   (1) Disability Discrimination in violation of the California Fair Housing and Employment

6   Act, *Cal. Gov. Code* § 12940 ("FEHA"); (2) Family Care and Medical Leave

7   Discrimination and Retaliation in violation of the California Family Rights Act, *Cal. Gov.*

8   *Code* § 12945.2 ("CFRA"); (3) Age Discrimination, in violation of FEHA; (4) Race

9   Discrimination, in violation of FEHA; (5) Failure to Prevent Discrimination and

10  Harassment, in violation of FEHA; (6) Retaliation for Opposing Violations of FEHA; (7)

11  Failure to Pay Approved Sick Leave; (8) Wrongful Termination in Violation of Public

12  Policy; and (9) Wrongful Constructive Termination in Violation of Public Policy.  (First

13  Am. Compl., Doc. 17.)  On July 25, 2011, the Court dismissed claims seven and nine.

14  (Order Granting in Part and Denying in Part Mot. to Dismiss, Doc. 29.)  Defendant filed

15  this Motion on March 5, 2012, seeking summary judgment on all remaining claims, and

16  Plaintiff's request for back pay, front pay, and punitive damages.

17

18      **III.    Legal Standard**

19          In deciding a motion for summary judgment, the Court must view the evidence in

20  the light most favorable to the non-moving party and draw all justifiable inferences in that

21  party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Summary

22  judgment is proper "if the [moving party] shows that there is no genuine dispute as to any

23  material fact and the [moving party] is entitled to judgment as a matter of law."  Fed. R.

24  Civ. P. 56.  A factual issue is "genuine" when there is sufficient evidence such that a

25  reasonable trier of fact could resolve the issue in the non-movant's favor, and an issue is

26  "material" when its resolution might affect the outcome of the suit under the governing

27  law.  *Anderson*, 477 U.S. at 248.

28

The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and quotation marks omitted). The burden then shifts to the non-moving party to "cit[e] to particular parts of materials in the record" supporting its assertion that a fact is "genuinely disputed." Fed. R. Civ. P. 56(c)(1); *see also In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) ("non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor").

## IV.   Discussion

### a.   *Discrimination and Retaliation*

"Because state and federal employment discrimination laws are similar, California courts look to federal precedent when interpreting FEHA." *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011) (internal citation omitted). "In particular, California courts use the familiar *McDonnell Douglas* [*Corp. v. Green*, 411 U.S. 792 (1973)] burden-shifting test when analyzing disparate treatment claims under FEHA." *Id.* "Under *McDonnell Douglas*, unlawful discrimination is presumed if the plaintiff can show that (1) she belongs to a protected class, (2) she was performing according to her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) other employees with qualifications similar to her own were treated more favorably." *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 640 n.5 (9th Cir. 2003) (citations and internal quotation marks omitted). Once a plaintiff has met this burden of production, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its

4

actions." *Earl*, 658 F.3d at 1112. "If the employer articulates a legitimate reason, the plaintiff must raise a triable issue that the employer's proffered reason is pretext for unlawful discrimination." *Id.* "The ultimate burden of persuasion remains with the plaintiff." *Id.* (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)).

Similarly, "[i]n order to establish a prima facie case of retaliation under FEHA, a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005) (internal citations omitted). The burden of production then shifts according to the *McDonnell Douglas* framework. *Id.*

Assuming Plaintiff establishes prima facie cases of discrimination and retaliation, the application of Defendant's AWOL Policy is a legitimate, nondiscriminatory explanation for Defendant's action. The Court finds instructive *Buckman v. MCI World Com, Inc.*, No. 08-16537, 374 Fed. Appx. 719, 720 (9th Cir. Mar. 23, 2010). In *Buckman*, the plaintiff asserted that his employer terminated him in violation of the federal Family Medical Leave Act ("FMLA") and the Americans with Disabilities Act ("ADA"). *Id.* Plaintiff's medical leave ended on a Friday, and on Monday, plaintiff called in forty-eight minutes after his shift was to begin to notify his employer that he would be absent. *Id.* The employer terminated plaintiff for failure to observe its policy, which required employees to call in the night before their shift if they were going to be tardy or absent. *Id.* The Ninth Circuit concluded that because the FMLA requires "an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." *Id.* (citing 29 C.F.R. § 825.302(d). Additionally, the California Supreme Court addressed a similar statutory AWOL Policy applicable to state employees, in which absence without leave for five consecutive working days is considered an "automatic resignation." *Coleman v. Dept. of Personnel*

*Admin.*, 52 Cal. 3d 1102, 1111 (1991).  Although the state retains some discretion whether to invoke the statute, the California Supreme Court held that a state employee surrenders his property interest in employment after being AWOL for five consecutive days.  *Id.* at 1115.  Therefore, the Court concludes that Defendant's application of its AWOL Policy provides a legitimate, nondiscriminatory reason for its action.

Shifting the burden of production to Plaintiff, he fails to provide sufficient evidence of pretext.  Plaintiff has failed to show that Defendant has continued to employ anyone who was absent without leave for three consecutive days.  (SUF ¶¶ 11-12.)  Nor did he show that, due to his disability, he was unable to call in, a point conceded by Plaintiff's counsel at oral argument.  Furthermore, Plaintiff has no evidence that discriminatory or retaliatory animus motivated April Sanders, the decisionmaker whom Plaintiff asserts was responsible for his termination.  (SGI ¶14.)  The only evidence attributable to April Sanders is a comment she allegedly made to Plaintiff when he reported his medical conditions:  "so now you want to file a false workers' stress claim, huh?"  (Pl.'s Depo. at 120:10-12; 134:12-13, Schulman Decl., Ex 19, Doc. 38.)[2]  However, there is no evidence that Plaintiff did, in fact, file a workers' compensation claim.  Furthermore, this stray comment related to a workers' compensation claim lacks a sufficient nexus to Defendant's later invocation of its AWOL Policy.  Accordingly, and in light of Defendant's objective application of its AWOL Policy, the Court concludes that Plaintiff fails to produce evidence of pretext sufficient to present his discrimination and retaliation claims to a jury.

---

[2] The Court notes that Plaintiff's Opposition cites the Statement of Genuine Issues for this fact. The Statement of Genuine Issues refers to Gary Sanders, not April Sanders.  However, Plaintiff's deposition refers to April Sanders as the person who made the comment regarding the "false" claim.

1        *b.  Failure to Prevent Harassment*

2            A claim for failure to prevent harassment requires a finding of actual harassment.

3    *Trujillo v. North Co. Transit Dist.*, 63 Cal. App. 4th 280, 288-89 (1998).  To prevail on a

4    hostile workplace claim, a plaintiff must show that he was subjected to unwelcome age-,

5    race-, or disability-related "verbal or physical conduct that was sufficiently severe or

6    pervasive to alter the conditions of plaintiff's employment and create an abusive work

7    environment."  *Stevens v. Cnty. of San Mateo*, No. 06-15634, 267 Fed. Appx. 684, 685-86

8    (9th Cir. Feb. 22, 2008) (internal citation and quotation marks omitted).  The Court must

9    look at the totality of the circumstances to determine whether an environment is hostile.

10   *Fuentes v. AutoZone, Inc.*, 200 Cal. App. 4th 1221, 1227 (2011).  "These may include the

11   frequency of the discriminatory conduct; its severity; whether it is physically threatening

12   or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with

13   an employee's work performance."  *Id.*

14           Based on the allegations in his deposition, Plaintiff's evidence of harassment

15   includes an incident in which a co-worker commented and his supervisor, Jason Vanesler,

16   agreed that a character on a slide show with shaded skin looked like Plaintiff (SGI ¶ 15);

17   Vanesler's comment that Plaintiff "didn't keep up with the younger pace" (SGI ¶ 24);

18   reprimands for taking time off to vote for President Obama and to watch President

19   Obama's inauguration (*id.* ¶¶ 26-31); Vanesler's reprimanding of Plaintiff for being on the

20   computer or using his cell phone, while white employees were not reprimanded (*id.* ¶ 32);

21   and Vanesler's regular questioning of Plaintiff about his restroom use (*id.* ¶ 33).  However,

22   Plaintiff's allegation regarding reprimands for phone and computer usage are vague, both

23   as to the details of the incidents and the frequency of the discipline, and Plaintiff's

24   allegation that he was regularly questioned regarding his restroom use is similar lacking in

25   detail regarding frequency.  Furthermore, Plaintiff asserts that the first time he was

26   questioned regarding his restroom use was on December 10, 2008 (SGI ¶ 23),

27

28

1  approximately a month-and-a-half before he went on medical leave, limiting the period in
2  which Vanesler could have "regularly questioned" Plaintiff.

3        Taken together, Plaintiff's allegations suggest, at the most, insensitive behavior.
4  "To be actionable, however, a workplace must be permeated with discriminatory
5  intimidation, ridicule and insult, that is sufficiently severe or pervasive to alter the
6  conditions of the victim's employment and create an abusive working environment."
7  *Brennan v. Townsend & O'Leary Enters., Inc.* 199 Cal. App. 4th, 1336, 1352 (2011).  The
8  conduct alleged by Plaintiff fails to rise to that level.  Accordingly, the Court GRANTS
9  summary judgment on Plaintiff's failure to prevent harassment claim.

10

11      c.  *Wrongful Termination in Violation of Public Policy*

12        Plaintiff's claim for wrongful termination is derivative of his discrimination and
13  retaliation claims.  *See Stevenson v. Superior Court*, 16 Cal. 4th 880, 897, 924 (1997).
14  Accordingly, summary judgment is GRANTED as to this claim.

15

16  **V.   Conclusion**

17  For the foregoing reasons, the Court GRANTS Defendant's Motion.

18

19  DATED:  <u>April 3, 2012</u>

20                                **<u>JOSEPHINE STATON TUCKER</u>**

21                                JOSEPHINE STATON TUCKER
                              UNITED STATES DISTRICT JUDGE

22

23

24

25

26

27

28